On Application for Rehearing
PER CURIAM.
This Court’s opinion of August 2, 2002, is withdrawn, and the following is substituted therefor.
*103 The Chambers County Commission and the individual members of that Commission (hereinafter collectively referred to as “the Commission”) appeal from an order of the Chambers Circuit Court, issuing a writ of mandamus requiring the Commission to call a special election, as demanded by the Chambers County Board of Education (“the Board”), to allow the voters to consider a five-mill[1] special school-district tax to be levied for a term of 20 years on property in Chambers County. We reverse and remand with instructions.

Background

At a meeting of the Commission held on August 20, 2001, the Board, in conjunction with the Board of Education for the City of Lanett, presented a resolution requesting that the Commission call a special election to propose the imposition of a special school-district tax. The resolution specified that the election be held on November 13, 2001, and that the assessment be at the rate of 5 mills and that it be imposed for 20 years.[2]
However, the Commission did not act on the resolution but instead tabled the issue; [3] the Commission indicated that it was delaying consideration of whether to schedule the requested special election until it could further examine the impact of a special election on the county’s budget. The Commission specifically noted that the special election the Board was requesting would cost in excess of $30,000; it further noted that the Commission did not have the money to fund such a special election and that funds for such a special election had not been included in the county’s budget.
The day after the Commission tabled the issue, the Board instituted this action, seeking a writ of mandamus compelling the Commission to hold the special election. The Board asserted that, pursuant to Amendment No. 3 and Amendment No. 202 to the Alabama Constitution of 1901, the Commission was required to call the special election, under the terms requested by the Board, for the purpose of considering the special school-district tax. The Board asserted that Amendment No. 3 and Amendment No. 202 authorized it to set the rate and term of any assessment considered for public school purposes and to specify the date for the special election. In its petition for a writ of mandamus, the Board asserted that the Commission had refused to act, and that, if the special election was not held as specified in the resolution, the voters of Chambers County would be deprivéd of their right to vote on the requested special assessment and the schools of Chambers County would suffer from a loss of funding.
The Commission answered the Board’s petition, asserting that the Board of Education for the City of Lanett was an indispensable party to the action. The Board *104 agreed, and the Board of Education for the City of Lanett was added as a petitioner. (The Board of Education for the City of Lanett and the Board are hereinafter collectively referred to as “the Boards.”)
In its response, the Commission asserted that, because the Boards are purely administrative bodies, they had no power to levy or collect a tax unless that power had been expressly delegated to them by the constitution. The Commission argued that because the constitution had not delegated this power to the Boards, the Commission was the sole taxing authority for Chambers County. The Commission asserted that to allow the Boards to call a special election and to dictate the terms of that election would violate Art. XI, § 212, of the Alabama Constitution of 1901, and Amendment No. 202 to the Alabama Constitution.[4]
The Commission noted that it had not refused to act but had merely tabled the issue for later consideration. The Commission further argued that the Boards had viable alternatives to holding a special election. The Commission pointed out that the issue of an additional tax assessment could be placed on the ballot for the June 2002 primary election at a cost to the county of only $500, while holding a special election would cost the county over $30,000.[5]
The Commission asserted that the writ should not issue because, it says, the Boards did not have a clear legal right to the relief sought, the Commission had not refused to perform, and the Boards had available to them another adequate remedy. In short, the Commission argued that the Boards had not met the stringent standards required to justify the issuance of a writ of mandamus.
At a hearing before the Chambers Circuit Court on September 6, 2001, the parties submitted stipulated facts and presented oral arguments (no ore tenus evidence was presented to the trial court). On that day, the trial court entered its order issuing the writ of mandamus and holding that Amendment No. 3 and Amendment No. 202 of the Alabama Constitution of 1901 required the Commission to call a referendum in accordance with the terms in the Boards’ resolution. The trial court held that the Commission could not ignore its constitutionally mandated duty, regardless of the financial ramifications of performing that duty.
The Commission raises three issues on appeal:
*105 “1. Pursuant to Amendment No. 202 to the 1901 Constitution of the State of Alabama, can [the Boards] dictate to [the Commission] the rate, term, and conditions of an ad valo-rem tax levy for educational purposes?
“2. Pursuant to Amendment No. 202 to the 1901 Constitution of the State of Alabama, can [the Boards] demand of [the Commission] the call of a special tax election on a date dictated by [the Boards] in regard to a county-wide ad valorem tax?
“3. Did [the Boards] sustain the burden of proof necessary for the Circuit Court of Chambers County, Alabama, to issue a Writ of Mandamus directing [the Commission] to order a special tax election at the tax rate, for the tax term, and on the date demanded by [the Boards]?”
We conclude that the Boards have no authority to invoke Amendment No. 202 at all. Therefore, we reverse the trial court’s order of September 6, 2001, issuing the writ of mandamus.

Discussion

The first sentence of Amendment No. 202 provides:
“The court of county commissioners, board of revenue, or other like governing body of each of the several counties in the state shall have the power to levy and collect a special county tax of not to exceed fifty cents on each one hundred dollars of taxable property....”
Despite this clear language, the Boards argue that the last sentence of Amendment No. 202 expressly authorizes a board of education to levy and collect the “additional property tax for county educational purposes,” by its reference to Amendment No. 3:
“The election provided for herein shall be called, held, conducted, paid for, and governed otherwise in the manner provided for an election on the school district tax authorized in constitutional amendment III [3].”
Amendment No. 3 addresses special school-district taxes in § 2:
“Section 2. The several school districts of any county in the state shall have power to levy and collect a special district tax not exceeding thirty cents on each one hundred dollars worth of taxable property in such district for public school purposes; provided, that a school district under the meaning of this section shall include incorporated cities or towns, or any school district of which an incorporated city or town is a part, or such other school districts now existing or hereafter formed as may be approved by the county board of education; provided further, that the rate of such tax, the time it is to continue and the purpose thereof shall have been first submitted to the vote of the qualified electors of the district and voted for by a majority of those voting at such election; provided further, that no district tax shall be voted or collected except in such counties as are levying and collecting not less than a three-mill special county school tax.”
The Boards, citing Runyan v. Thompson, 232 Ala. 390, 390, 168 So. 423, 423-24 (1936), point out that, although § 2 of Amendment No. 3 authorizes the levy of a special school-district tax, “the machinery for putting [that tax] into effect is provided by the Legislature.” Thus, the Boards argue, this Court must look to the enabling legislation for guidance as to how a special school-district tax levied pursuant to § 2 of Amendment No. 3 is to be implemented. The Boards also assert that this Court must refer to that same enabling legisla *106 tion for guidance as to how a property tax levied pursuant to Amendment No. 202 is to be implemented.
The enabling legislation for Amendment No. 3 is codified at § 16-13-180 and § 16-13-181, Ala.Code 1975.[6] Accordingly, the Boards argue that we must consider and construe §§ 16-13-180 and 16-13-181, Ala. Code 1975, to determine whether the Boards are entitled to set the rate and term of any property-tax assessment considered pursuant to Amendment No. 202 for county educational purposes and whether the Boards are entitled to set the date of a special election pursuant to Amendment No. 202.[7]
Section 16-13-180, Ala.Code 1975, provides:
“Upon a petition signed by 200 or more qualified electors of any county to the county commission, said county commission shall order an election to be held at the time specified in said petition to determine whether or not a special tax shall be levied for public school purposes within said county; and, upon request of the county board of education to the county commission, said court shall order an election to be held at the time requested by the said board of education to determine whether or not a special tax shall be levied for public school purposes within any school tax district in the county under the control of such board; and, upon the request of any city board of education to the county commission, said court shall order an election to be held at the time requested by said board of education to determine whether or not a special tax shall be levied for public school purposes within said city.”
Section 16-13-181, Ala.Code 1975, provides:
“Upon the written request of the county board of education or of the .board of education of any city having a city board of education for a special election in any school tax district under the control of the respective board, the county commission shall call an election at the time and for the rural or city school tax districts as requested by the respective board of education and shall appoint three managers and one returning officer for each voting place in the school tax district or at such special voting places as may be designated for the special election by the judge of probate of the county who shall locate such voting places, upon the recommendation of the county board of education, and such special voting places shall be set out in the notices of the special election.”
The essence of the Boards’ arguments is that the last sentence of Amendment No. 202 grants the Boards the substantive five-mill taxing power granted to the county governing body by the first sentence of Amendment No. 202 and that, therefore, the Boards can invoke Amendment No. 202 for the purpose of calling an election and levying the five-mill tax. The last sentence of Amendment No. 202 reads: “The election provided for herein shall be called, held, conducted, paid for, and governed otherwise in the manner provided for an election on the school district tax authorized in constitutional amendment III *107 [ 3].” Amendment No. 3 authorizes only a three-mill tax.
The Boards’ rationale fails for several reasons. First, the only provision in Amendment No. 202 substantively addressing the power to tax is the first sentence, which grants five-mill taxing power only to the county governing body — not to any school board. The last sentence of Amendment No. 202 purports only to provide for an election procedure, not to provide for any extension or expansion of the substantive five-mill taxing power. Second, the last sentence of Amendment No. 202 is a general provision, which, as a matter of construction, cannot countermand the express, specific provisions of the first sentence limiting the five-mill taxing power to the county governing body. Summers v. State, 244 Ala. 672, 673, 15 So.2d 502, 503 (1943); Cherokee County v. Cunningham, 260 Ala. 1, 4, 68 So.2d 507, 510 (1953); and Ex parte E.J.M., 829 So.2d 105, 108-09 (Ala.2001). Third, the reference to Amendment No. 3 in the last sentence of Amendment No. 202, which grants only three-mill taxing power, can hardly serve as a vehicle to grant the Boards five-mill taxing power.
For these reasons, only the county governing body — not the Boards — has standing to invoke Amendment No. 202 as a matter of right. The effort of the Boards to invoke Amendment No. 202 for its five-mill taxing power was unauthorized and ineffectual. Therefore, § 16-13-180 and § 16-13-181, Ala.Code 1975, cited by the Boards as the enabling legislation for Amendment No. 202, are not germane to this case.
For these reasons, the Boards were not entitled to a writ of mandamus to enforce the Boards’ claim to taxing power under Amendment No. 202. Therefore, the order of the trial court issuing the writ is reversed and the cause is remanded with instructions for the trial court to vacate its writ.
APPLICATION GRANTED; OPINION OF AUGUST 2, 2002, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH DIRECTIONS.
SEE, LYONS, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
MOORE, C.J., and HOUSTON and BROWN, JJ., concur in the result.
STUART, J., concurs in the result and dissents from the rationale.

.A “mill” equals one-tenth of a cent. Thus, the references in the Alabama Constitution and in statutes to "fifty cents on each one hundred dollars” and to “thirty cents on each one hundred dollars,” are the equivalent of five mills and three mills, respectively. The constitutional and statutory provisions discussed in this opinion use these terms interchangeably; those constitutional and statutory provisions are attached to this opinion as Appendix A ("Applicable Constitutional Provisions”) and Appendix B ("Applicable Code Provisions”).

. The Board’s resolution specified that any proceeds received from the five-mill assessment were to be used only for "capital purposes, including the payment of indebtedness heretofore or hereafter incurred for capital purposes.”

. A motion was made and seconded to call the election as requested by the Board. A motion was then made to table the motion calling for the election. The tabling motion passed by a vote of 4-2.

. The Commission argued that § 16-13-180 and § 16-13-181, Ala.Code 1975, which purportedly granted the Boards the power to dictate the date of any special election, as well as the power to set the rate and term of any special tax assessment, must be construed so as not to violate the Alabama Constitution; otherwise, it argues, those statutes must be declared unconstitutional. The Commission notified the Alabama attorney general that it was challenging the constitutionality of a statute. Although the record does not contain a waiver of service from the attorney general, according to the Boards the attorney general declined to participate in this action.

. The Commission asserted that the special election demanded by the Board would have cost the county approximately $30,000, whereas if the election was held on the date proposed by the Commission it would cost the county only $500. The Commission also argued that, under the Boards’ interpretation of the constitution and the pertinent statutes, the Boards could repeatedly call for special elections regarding additional property taxes and the Commission would have no choice but to fund every such request, regardless of the expense associated with those special elections. The Commission asserted that such an interpretation defeats the Commission’s authority to set the budget for Chambers County and to control county funds.

. The successor statutes to §§ 261-270 of the School Code of 1927 are found at § 16 — 13— 180 et seq., Ala.Code 1975. Section 16 — 13— 180 is the successor to § 261 of the 1927 School Code; § 16-13-181 is the successor to § 265 of the 1927 School Code.

. Additionally, the trial court’s order expressly relied upon those Code sections in issuing the writ of mandamus directing the Commission to hold a special election.